REGALITI, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 92–03–00201

(Dated May 21, 1992)

*Rode & Qualey (Patrick D. Gill)* for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, *(Pamala G. Larrabee),* United States Department of Justice, Civil Division, for defendant.

OPINION

RESTANI, *Judge:* This case involves the classification for tariff purposes of women's garments, which are currently known in the fashion industry as "leggings." The garments at issue are form-fitting combination leg and lower torso coverings which are of varying lengths, from below the knee to ankle length and which may include stirrups running under the mid-part of the foot. The garments are cut and sewn knitted items of 95% cotton and 5% spandex.[1]

The United States Customs Service, after some debate, classified the garments under item 6104.62.20101 of the Harmonized Code ("HTSUS"). Plaintiff claims classification under HTSUS item 6115.19.00106 or alternatively under a general provision for other knitwear, HTSUS 6114.20.00603. At trial plaintiff also claimed classification under HTSUS item 6406.99.15805, which is under a heading that includes "leggings." But the leggings referred to in that heading are two-piece articles and are not the current fashion item known as "leggings. " This use of the word "leggings" was not common at the time of passage of the Harmonized Code. Thus, the relevant tariff classifications are as follows:

HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES ANNOTATED (1992)

| 6104 | Women's or girls' suits, ensembles, suit-type jackets, blazers, dresses, skirts, divided skirts, |
|------|--------------------------------------------------------------------------------------------------|

---

[1] This opinion memorializes the bench ruling of May 20, 1992. Plaintiff requested an expedited trial and decision.

trousers, bib and brace overalls, breeches and shorts (other than swimwear), knitted or crocheted: * * *

Trousers, bib and brace overalls, breeches and shorts: * * *

| | |
|---|---|
| 6104.62 | Of cotton: * * * |
| 6104.62.20 | Other' ..................... 16.7% |
| | Trousers and breeches: |
| 6104.62.20101 | Women's .............. (348) |

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

| | |
|---|---|
| 6114 | Other garments, knitted or crocheted: * * * |
| 6114.20.00 | Of cotton ..................... 11.5% |
| | Other: * * * |
| 6114.20.00603 | Women's or girls' ........... (359) |

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

| | |
|---|---|
| 6115 | Panty hose, tights, stockings, socks and other hosiery, including stockings for varicose veins, and footwear without applied soles, knitted or crocheted: |
| | Panty hose and tights: * * * |
| 6115.19.00 | Of other textile materials ....... 17% |
| 6115.19.00106 | Of cotton .................. (359) |

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

The parties are in agreement that according to the General Rules of Interpretation ("GRI") of the HTSUS, if two items apply, the higher numbered item will govern. *See* GRI 3. The "other" category is only reached if neither more specific category applies.

Heading 6104 covers numerous items of knitted outer apparel and includes "trousers." Several witnesses testified that the garments at issue do not fit the commonly understood fashion concept of "trousers," although they may fit the more general concept of "pants." The court finds that the word "trousers" as used in heading 6104 is a general term covering any knit streetwear bottom, as 6104 is the general knit apparel provision. There is no other provision for knit "pants" and it is clear that the drafters would not wish to leave the entire general area of knit pants to a basket provision. Therefore, the only sensible way to read the word "trousers" in 6104 is not as constructed, highly tailored pants, but as general streetwear bottoms[2] The garments at issue are clearly pants. They are streetwear bottoms. Thus, they fall within item 6104.62.20101.

The more difficult question in this case is whether the articles at issue are tights. If they are, item 6115.19.00106 will control classification.

[2] In common American parlance "trousers" is a more old fashioned, perhaps formal, way of saying "pants," which also has the Advantage of avoiding any reference to underwear.

The court has been provided with many definitions of "tights." The garments at issue would appear to fit most of those definitions, but other items which are not commonly known as tights would also fit the definitions. When it comes to defining fashion leg wear, the lexicographic sources are not particularly helpful and, as witnesses indicated, are not often used in the industry. They become dated very quickly.

What all parties would appear to agree constitute women's "tights" are items which resemble panty hose, but which are made of thicker material. They may also lack feet. These items are generally sold in packages in hosiery departments. They are also sold in specialty stores, such as stores specializing in dance and exercise wear.

There was no evidence that the items at issue here are ever sold folded, in packages, or in hosiery departments. The evidence revealed instead that they are displayed on pants hangers with other street wear items. They are of fairly thick, stretchy material and are usually worn with tee shirts, tunics, sweaters, jackets or leotards, covering most of the lower torso. The truly fit or very young may wear them with no covering over the lower torso, for example with short tops known as "crop tops." Evidence revealed that the items are advertised in all of these ways.

Plaintiff's fashion merchandising experts testified that these items were "tights," and plaintiff advertises them as "tights." Defendant's manufacturing and merchandising experts testified they were not "tights," and other advertising would appear not to refer to them as "tights," but as "leggings."

The court is not highly persuaded by plaintiff's invoices or advertising calling the items "tights." To avoid pants quota limitations plaintiff must refer to the items as "tights." The court is more persuaded by the fact that others do not usually call these items tights and plaintiff's customers do not sell them or display them as one would ordinarily display and sell what are commonly considered "tights," that is hosiery-type tights.

Of crucial importance to the court, however, is the wording of the tariff heading at issue, 6115. Except for a reference to a footwear article, a slipper which would appear to be something like a very heavy sock, the heading covers hosiery articles, that is articles commonly thought of as underwear or innerwear, not street clothes. The fact that the articles at issue are used as exercise wear does not make them underwear. Gyms and health clubs have become places to display fashions. While less modesty may be the norm in comparison to street attire, denizens of health clubs likely would not consider themselves to be exercising in underwear.

Defendants have argued that tights are hosiery and currently all hosiery is made on small diameter circular knitting machines.[3] The court does not find it necessary to so restrict the coverage of heading 6115. Whether the definition of hosiery includes this manufacturing limitation or not, heading 6116 does not cover the garments at issue. Garments classified under heading 6115 must be hosiery or very similar to hosiery. That is the thrust of the provision. The explanatory notes to the harmonized code support this view, as they consider panty hose and tights to be very similar, if not identical.

Accordingly, the court concludes that the items at issue are not commonly known as "tights." They are not similar to hosiery. They are not marketed like hosiery. The garments at issue are "pants." They are used for exercise or streetwear and they belong under the general knit apparel heading, 6104.

---

[3] This results in no side seams.